[Cite as *Adams v. Adams*, 2012-Ohio-5131.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

MARISSA D. ADAMS,

    PLAINTIFF-APPELLEE,            CASE NO. 14-12-03

    v.

MICHAEL JASON ADAMS,            **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Domestic Relations Division
Trial Court No. 04 DR 0168

**Judgment Reversed and Cause Remanded**

Date of Decision: November 5, 2012

APPEARANCES:

    *Anthony W. Greco* **for Appellant**

    *Rebecca J. Stumler* **for Appellee**

**PRESTON, J.**

{¶1} Defendant/father-appellant, Michael Jason Adams ("Jason"), appeals the Union County Court of Common Pleas' decision modifying his child support obligation and awarding attorney's fees and costs to plaintiff/mother-appellee, Marissa D. Adams. For the reasons that follow, we reverse.

{¶2} Jason and Marissa were married on June 27, 2003. (Doc. No. 1). The parties had one child together prior to the marriage in 2001. (*Id.*). On August 23, 2004, Marissa filed a complaint seeking divorce on the basis of extreme cruelty, gross neglect of duty, and incompatibility. (*Id.*). On September 14, 2004, Jason filed an answer and counterclaim for divorce. (Doc. No. 14).

{¶3} On January 13, 2005, the trial court filed an agreed judgment entry/divorce decree, dividing the parties' assets, and incorporating a shared parenting agreement governing their minor child. (Doc. No. 48). In pertinent part, the shared parenting agreement provided that despite the fact that Jason's child support obligation under the Ohio Child Support Guidelines would be $334.90 per month, "[t]he parties have agreed to a deviation in their child support obligation so that neither party shall pay the other any child support." (*Id.*, attached).

{¶4} On October 19, 2010, Marissa filed a motion to terminate the shared parenting plan, asking the trial court, in relevant part, to designate her as the

residential parent of the parties' minor child and to order Jason to pay $579.38 per month in child support. (Doc. No. 50).

{¶5} On December 30, 2010, Jason filed a contempt motion against Marissa for allegedly violating the shared parenting plan; a motion for the appointment of a Guardian Ad Litem ("GAL") for the parties' minor child; and, a motion for an in-camera interview of the parties' minor child. (Doc. Nos. 64, 67-68).

{¶6} On February 28, 2011, the trial court appointed attorney Clifton G. Valentine to serve as GAL for the parties' minor child. (Doc. No. 86).

{¶7} On May 3, 2011, Jason filed another contempt motion against Marissa for allegedly violating the shared parenting plan. (Doc. No. 90).

{¶8} On June 6, 2011, Jason filed a motion to compel Marissa to submit responses to his second set of interrogatories and a second request for production of documents. (Doc. No. 100). On that same date, the GAL submitted his report and recommendation, noting, in pertinent part, that "I do not believe that the parties will be able to demonstrate a substantial change in circumstances which is required to terminate the Shared Parenting Plan and award custody to one party or the other." (Doc. No. 85, 101).

{¶9} On June 14, 2011, Marissa filed a motion to compel discovery, particularly as it related to documents concerning Jason's income from the family trucking business. (Doc. No. 105).

{¶10} On June 20, 2011, the parties filed a first amended shared parenting plan, resolving many of the issues in Marissa's motion to terminate the original shared parenting plan, with the exceptions of child support, the dependency tax exemption, and health insurance. (Doc. No. 103); (Aug. 24, 2011 Tr. at 6, 10). On July 12, 2011, the trial court adopted the parties' first amended shared parenting plan. (Doc. No. 111). On that same day, the hearing on Marissa's motion to terminate the shared parenting plan and seeking child support was rescheduled to August 24, 2011 upon the parties' oral motion. (Doc. No. 109).

{¶11} On August 2, 2011, the parties filed an agreed judgment entry, dismissing with prejudice Jason's December 30, 2010 motion for contempt; Jason's December 30, 2010 motion to interview the parties' minor child; Jason's May 3, 2011 motion to show cause against Marissa for violating the agreed judgment entry of divorce; Jason's June 6, 2011 motion to compel discovery; and, Marissa's June 14, 2011 motion to compel discovery. (Doc. No. 113).

{¶12} On August 23, 2011, Marissa filed a motion for a continuance of the motion hearing, alleging that Jason failed to comply with her discovery requests. (Doc. No. 114). The matter came on for hearing on August 24, 2011, at which

time the trial court denied Marissa's continuance request. (Aug. 24, 2011 Tr. at 9).

{¶13} On August 26, 2011, the magistrate ordered the parties to submit proposed findings of fact and conclusions of law respecting: (1) the amount of Jason's income for computation of child support; and (2) what testimony or exhibits presented at the hearing support those proposed findings and conclusions. (Doc. No. 115). Upon Jason's motion, the magistrate subsequently modified its order to include proposed findings of fact and conclusions of law concerning Marissa's income for purposes of the child support calculation. (Doc. Nos. 116-117).

{¶14} On September 26, 2011, Jason submitted post-hearing briefs concerning the parties' income for child support calculation purposes and attorney's fees. (Doc. Nos. 118-119). On that same day, Marissa filed her post-hearing brief concerning the parties' income for child support calculation purposes. (Doc. No. 120). On October 11, 2011, Marissa filed a reply brief concerning attorney's fees and a rebuttal brief concerning the parties' income for child support calculation purposes. (Doc. No. 123). That same day, Jason filed his reply brief concerning the parties' income for child support calculation purposes. (Doc. No. 125).

{¶15} On October 19, 2011, the magistrate issued a decision, concluding, in relevant part, that: Marissa's income for child support calculation purposes is $45,697.60/year; Jason's income for child support calculation purposes is $78,723.00/year; based upon these incomes, Jason's child support obligation to Marissa is $888.56/month, which is a substantial change in circumstances meriting a modification of the child support order; a deviated child support order in the amount of $696.38/month (including cash medical support and the 2% processing fee) would be in the minor child's best interest when Marissa provides health insurance for the parties' minor child; Jason should pay Marissa's attorney's fees of $2,036.67 and litigation expenses of $8,427.90. (Doc. No. 127).

{¶16} On November 2, 2011, Jason filed objections to the magistrate's decision, asserting, in pertinent part, that no substantial change in circumstances existed to support the modification of child support; the magistrate erred in computing the parties' income and naming him the obligor; and, he was not put on notice of Marissa's intent to seek attorney's fees and costs as required to support such an award. (Doc. No. 130).

{¶17} On December 2, 2011, the trial court overruled Jason's objections, concluding that the deviation in the amount of child support, alone, constituted a substantial change in circumstances sufficient to modify the child support order; Jason did not request findings of fact and conclusions of law concerning why the

magistrate named him as obligor and the same was in the best interest of the parties' minor considering the parties' relative finances; and, Jason's objections concerning the computation of income ought to be overruled considering his "lack of candor and failure to maintain or provide reliable business records of income and expenses * * *."  (Doc. No. 131).  On January 11, 2012, the trial court filed its final judgment entry.  (Doc. No. 133).

{¶18} On February 1, 2012, Jason filed a notice of appeal.  (Doc. No. 138). Jason now appeals raising five assignments of error for our review.

### Assignment of Error No. I

**The trial court erred and abused its discretion in finding that there was a change in circumstances warranting a modification of child support.**

{¶19} In his first assignment of error, Jason argues that the trial court erred by failing to find a change in circumstances beyond the ten percent deviation in child support as required to modify child support when the parties originally agreed to the amount of child support.

{¶20} R.C. 3119.79 sets forth the necessary criteria and methodology for a trial court to modify an existing child support order as follows:

(A)  If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the

amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation. If that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.

* * *

(C) If the court determines that the amount of child support required to be paid under the child support order should be changed due to a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order or the last modification of the child support order, the court shall modify the amount of child support required to be paid under the child support order to comply with the schedule and the applicable worksheet through the line establishing the actual annual obligation, unless the court determines that the amount calculated

pursuant to the basic child support schedule and pursuant to the applicable worksheet would be unjust or inappropriate and would not be in the best interest of the child and enters in the journal the figure, determination, and findings specified in section 3119.22 of the Revised Code.

**{¶21}** Trial courts are given broad discretion in determining whether to modify existing child support orders. *Woloch v. Foster*, 98 Ohio App.3d 806, 810 (2d Dist.1994). Therefore, a trial court's decision regarding a motion to modify a child support order will not be overturned absent an abuse of discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). An abuse of discretion is more than a mere error in judgment; rather, it suggests that a decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶22}** The magistrate sub judice recalculated the child support obligation and determined that a ten-percent deviation existed from the original child support order and the recalculated amount. (Oct. 19, 2011 Decision, Doc. No. 127).[1] The magistrate further determined that the ten-percent deviation was "a change of circumstance substantial enough to require a modification of the child support

---

[1] Contrary to the representations of counsel for appellee, the record does contain a copy of the original child support calculation worksheets from which the magistrate concluded that Jason's previous child support would have been $523.34/month, absent the parties' agreement to deviate the same to zero dollars. (Doc. Nos. 48, 127).

amount" in accordance with R.C. 3119.79(A). (*Id.*). Jason filed objections to the magistrate's decision arguing, in relevant part, that the ten-percent deviation alone was not a sufficient change in circumstances necessary to modify the child support order since the parties had originally deviated child support to zero dollars by agreement. (Doc. No. 130). Jason relied upon this Court's decision in *Bonner v. Bonner* in support of his objection. (*Id.*); 3d Dist. No. 14-05-26, 2005-Ohio-6173. The trial court overruled Jason's objection, reasoning that the instant case was distinguishable from *Bonner v. Bonner* since the trial court herein, like the trial court in *Banfield v. Banfield*, 12th Dist. Nos. CA2010-09-066, CA2010-09-068, 2011-Ohio-3638, *ordered* that the parties' child support be deviated to zero dollars unlike in *Bonner* where the parties deviated the father-obligor's child support obligation in an amount more than the calculated amount *by agreement*. (Dec. 2, 2011 Journal Entry, Doc. No. 131).

{¶23} The issue presented in this case is whether the trial court erred by modifying Jason's child support obligation based upon the ten-percent deviation in R.C. 3119.79(A) alone. This issue, in turn, requires us to decide whether our decision in *Bonner v. Bonner* applies; we conclude that it does apply.

{¶24} The father-appellant/obligor in *Bonner v. Bonner* agreed to pay child support in the amount of $200/week plus a processing fee, which constituted an upward deviation from the child support obligation under the child support

schedule. 2005-Ohio-6173, at ¶ 3-4. The father-appellant/obligor agreed to pay this same amount of child support until his youngest child turned 18 years old and was out of high school. *Id*. at ¶ 4-5. In light of the parties' agreement concerning child support, we concluded that R.C. 3119.79(A) must be read in conjunction with R.C. 3119.79(C). *Id*. at ¶ 11. We specifically stated that:

> [w]here, as in the present case, a party voluntarily agrees to pay child support in an amount exceeding the statutory child support guideline schedule, a trial court granting a motion for modification must first find both (1) a change in circumstances, and (2) that such a change of circumstances 'was not contemplated at the time of the issuance of the child support order.' *Id*.

We concluded in *Bonner* that "the circumstances surrounding the ten per cent deviation were 'contemplated at the time of the issuance of the child support order'"; and therefore, the appellant had failed to meet the second element under R.C. 3119.79(C). *Id*. at ¶ 15.

{¶25} This Court has followed *Bonner v. Bonner* on two other occasions. In *Steggeman v. Steggeman*, the parties originally agreed to deviate the mother-appellee's child support downward from $120.31/month to zero dollars/month in February 1998. 3d Dist. No. 8-06-23, 2007-Ohio-5482, ¶ 2. The mother-appellee's child support obligation was subsequently increased to $244.92/month

in October 1999 and then to $463.45/month October 2002, following two administrative reviews. *Id.* at ¶ 3. In April of 2004, the parties filed a shared parenting plan, which specifically provided that "[n]othing herein shall modify the current child support order or the allocation of the tax exemptions." *Id*. at ¶ 4. Thereafter, in August of 2005, the mother-appellee filed a motion to modify child support. *Id*. at ¶ 5. The magistrate concluded that the mother-appellee had met her burden under R.C. 3119.79(A) and (C), and a modification of the existing child support order was appropriate. *Id*. The trial court adopted the magistrate's decision and modified the mother-appellee's child support to $89/month, deviating from the recalculated amount of $665/month in light of the significant amount of time the children were spending with the mother-appellee under the parties' April 2004 shared parenting plan. *Id*. at ¶ 14-15.

{¶26} On appeal, we concluded, contrary to the magistrate, that *Bonner v. Bonner* applied since the parties agreed in the April 2004 shared parenting plan to continue mother-appellee's child support obligation at the previously administratively-ordered amount of $463.45/month. *Id*. at ¶ 13-14. We further disagreed with the trial court's conclusion that the mother-appellee demonstrated "a substantial change of circumstances that was not contemplated at the time of the issuance of the * * * last modification of the child support order" as required by R.C. 3119.79(C), because the changes were either insubstantial or occurred

*prior to* the parties April 2004 agreement. *Id*. at ¶ 16. Consequently, we reversed the trial court's decision to modify the mother-appellee's child support obligation. *Id*. at ¶ 17-18.

{¶27} Likewise, the parties in *Adams v. Sirmans* were originally divorced in Georgia and entered into an agreement providing for joint physical custody of the children and for no exchange of child support. 3d Dist. No. 5-08-02, 2008-Ohio-5400, ¶ 2. After the parties moved to Ohio several years later, the father-appellant filed a motion to terminate the shared parenting agreement. *Id*. at ¶ 4. The magistrate overruled the motion but ordered the father-appellant to pay child support. *Id*. at ¶ 5. The trial court adopted the magistrate's decision maintaining the shared parenting plan but rejected the magistrate's decision to award mother-appellee child support since the magistrate failed to impute income to mother-appellee. *Id*. Thereafter, the magistrate entered a new decision, and the trial court adopted this subsequent decision. *Id*. The father-appellant appealed the trial court's decision ordering him to pay child support. *Id*.

{¶28} In light of the parties' original agreement that no child support would be exchanged, this Court determined that *Bonner v. Bonner* applied, requiring R.C. 3119.79(A) and (C) to be read together. *Id*. at ¶ 10-11. We found that the circumstances the trial court relied upon were contemplated at the time of the original order, and further that the parties' subsequent marriages, additional

children, and new jobs were "not of the type [of circumstances] that would not be contemplated at the time the parties entered into their negotiated separation agreement." *Id*. at ¶ 11. Since the mother-appellee failed to establish a substantial change in circumstances not contemplated at the time of the original child support order as required under R.C. 3119.79(C), we reversed the trial court's decision to modify the father-appellant's child support obligation. *Id*.

{¶29} In his October 19, 2011 decision, the magistrate sub judice stated that the parties were divorced by an agreed judgment entry that incorporated the parties' shared parenting plan. (Oct. 19, 2011Decision, Doc. No. 127). The magistrate then states:

> The court found that if Father was the child support obligor, he would pay $523.34 per month and that is [sic] Mother were obligor, she would pay $334.90 per month. The court further found that a deviation of child support to zero was in the best interest of the child. (*Id*.).

However, the magistrate's decision failed to note that the parties' original, incorporated shared parenting plan provided the following: "[t]he parties have agreed to a deviation in their child support obligation so that neither party shall pay to the other any child support." (Doc. No. 48, attached). It appears that the trial court herein, upon review of the aforementioned language in the magistrate's

decision, understandably but erroneously concluded that the original child support order was *court-ordered* and distinguished this case from *Bonner v. Bonner* on that basis. While the Court of Appeals for the Twelfth Appellate District has distinguished our decision in *Bonner v. Bonner* on this same basis in *Banfield*, 2011-Ohio-3638, at ¶ 23, the record here affirmatively demonstrates that the parties' child support deviation to zero was *by agreement*. The fact that the trial court finds that the parties' agreement to pay zero child support in their shared parenting plan is in in the best interest of the minor child, as it is required to do under R.C. 3109.04, does not mean the child support is "court-ordered" as the court in *Banfield* determined. The trial court in *Banfield* deviated the father-obligor's child support obligation to zero since the parties had similar incomes and were equally sharing parenting time and child-related expenses, not based upon an agreement of the parties like in *Bonner* and herein. 2011-Ohio-3638, at ¶ 4, 23; 2005-Ohio-6173, at ¶ 3-4.

{¶30} Since the parties' entered into an agreement to deviate the child support obligation to zero, our decision in *Bonner v. Bonner* is applicable. Therefore, prior to modifying the child support obligation, the trial court was required to find more than a ten-percent deviation under R.C. 3119.79(A); the trial court was also required to find a substantial change in circumstances that was not contemplated at the time of the issuance of the child support order under R.C.

3119.79(C). *Id.* at ¶ 11.  The trial court failed to make this additional finding prior to modifying the child support order here, and therefore, erred as a matter of law. Consequently, this matter must be remanded to the trial court for the trial court to make further findings under R.C. 3119.79(C) based upon the evidence in the record.[2]

> **{¶31}** Jason's first assignment of error is, therefore, sustained.

> ## Assignment of Error No. II

> **The trial court erred and abused its discretion when it failed to make a findings of fact [sic] as to why defendant is designated as the obligor for child support purposes.**

> ## Assignment of Error No. III

> **The trial court erred and abused its discretion by ordereing [sic] defendant to pay child support, by not deviating child support to $0, or, alternatively, by not deviating by an amount which is in the best interest of the minor child.**

> ## Assignment of Error No. IV

> **The trial court erred and abused its discretion by not properly calculating both plaintiff and defendant's income by failing to consider plaintiff's consistent rental income, by failing to consider discrepancies in plaintiff's many reported gross incomes, and by improperly imputing income to defendant for costs paid for defendant's residence.**

---

[2] Nothing in our opinion should be read to *require* further hearings in this matter since the trial court may make its further finding of a substantial change in circumstances upon the available record, if appropriate. The cases cited herein should be helpful for purposes of making this further finding.

## Assignment of Error No. V

**The trial court erred and abused its discretion by awarding plaintiff's attorney's fees and litigation costs.**

{¶32} In his remaining assignments of error, Jason raises issues concerning the trial court's failure to make findings designating him an obligor for child support purposes, the trial court's calculation of income for child support purposes, and the trial court's decision to award Marissa attorney's fees and litigation costs.[3] These assignments of error are all rendered moot in light of our conclusion that the trial court erred by modifying Jason's child support obligation without making the requisite findings required under R.C. 3119.79(A) and (C).

{¶33} Jason's second, third, fourth, and fifth assignments of error are moot and will not be considered.

{¶34} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**

---

[3] We note that the trial court may need to reevaluate its award of attorney's fees and costs upon remand if it determines upon review of the record that no substantial change in circumstances occurred sufficient to modify Jason's child support obligation.