[Cite as *Sifferlin v. Sifferlin*, 2014-Ohio-5645.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| AIMEE M. SIFFERLIN | C.A. No.     27169 |
|     Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRIAN F. SIFFERLIN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
|     Appellee | CASE No.    2010-05-1437 |

DECISION AND JOURNAL ENTRY

Dated: December 23, 2014

CARR, Judge.

{¶1}  Appellant Aimee Sifferlin, nka Lucas, appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division.  This Court affirms.

I.

{¶2}  Aimee ("Mother") and Brian Sifferlin ("Father") jointly petitioned for dissolution of marriage.  The parties appended to their petition a separation agreement which indicated their "desire to settle all matters arising out of their marital relationship."  The separation agreement incorporated a shared parenting plan in which Father would have companionship with the three children (C., B., and E.) solely on alternate weekends (and other times as the parties might mutually agree).  Despite the fact that Mother would have companionship with the children during the vast majority of the time, the parties agreed to deviate from the child support worksheet and agreed that neither party would pay child support to the other.  Pursuant to the child support worksheet, in the absence of any deviation, Father would have been obligated to

pay support in the amount of $995.08 per month. The domestic relations court issued a decree of dissolution, attaching and incorporating the terms of the parties' separation agreement.

{¶3} Fourteen months later, Mother filed a "motion to establish child support." The matter was scheduled for hearing before the magistrate who found that, despite the parenting time provisions in the shared parenting plan, the children were spending the majority of the time with Father. The magistrate further found that Father was assuming financial responsibility for certain costs that the parties had previously agreed to divide equally. Based on those findings, the magistrate denied Mother's motion to establish child support. The domestic relations court adopted the magistrate's decision the same day. Mother filed timely objections. The trial court sustained the objections and remanded the matter to the magistrate for further hearing and recalculation of child support pursuant to R.C. 3119.79(A).

{¶4} Mother filed a supplemental memorandum in support of her motion to establish child support, arguing that Father's income had increased in 2012 and that there had been a substantial change in circumstances since the date of dissolution of the parties' marriage. Father filed a motion for reallocation of parental rights and responsibilities, arguing that the three children have been primarily in his care by mutual agreement of the parties notwithstanding the parties' agreement in the shared parenting plan that Father was to have parenting time with the children merely every other weekend.

{¶5} The magistrate held another hearing on Mother's motion to establish child support, which Mother characterized as a motion to modify child support pursuant to R.C. 3119.79. The magistrate denied the motion. The domestic relations court adopted the magistrate's decision the same day. Mother filed timely objections, which the trial court overruled. The domestic relations court found that, although there was a greater than ten percent

difference between the amount of child support Father would have been obligated to pay pursuant to the original child support worksheet and the recalculated child support amount, there was no change in circumstances not contemplated by the parties that would warrant modifying the parties' prior agreement that neither parent would pay child support to the other. Accordingly, the trial court ordered that the child support order would remain at $0. Mother has appealed and raises three assignments of error, which this Court consolidates for purposes of review.

II.

### ASSIGNMENT OF ERROR I

THE COURT ERRED AND ABUSED ITS DISCRETION IN ITS FINDINGS WITH REFERENCE TO [FATHER'S] INCOME FOR CHILD SUPPORT CALCULATION PURPOSES AND IN THE CHILD SUPPORT COMPUTATION WORKSHEET ATTACHED TO THE MAGISTRATE'S DECISION DATED AUGUST 22, 2013.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ITS FINDINGS AND ORDER THAT [FATHER'S] CHANGE IN CIRCUMSTANCES WAS NOT SUBSTANTIAL AND THAT THE CHANGE OF CIRCUMSTANCES WAS CONTEMPLATED BY THE PARTIES.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY ITS ORDER OVERRULING [MOTHER'S] OBJECTIONS TO THE MAGISTRATE'S DECISION DATED AUGUST 22, 2013.

{¶6} Mother argues that the trial court erred by denying her motion to modify child support. This Court disagrees.

{¶7} As an initial matter, this Court notes that the parties agreed, not that there would be no child support order, but rather that neither party would be obligated to pay any child support, effectively establishing child support in the amount of zero dollars. We have repeatedly

held that "a child support order which requires zero support to be paid is an existing child support order." (Quotations omitted.) *Fields v. Fields*, 9th Dist. Medina No. 04CA0018-M, 2005-Ohio-471, ¶ 11, quoting *Rodriguez v. Rodriguez*, 9th Dist. Lorain No. 00CA007699, 2001 WL 458674 (May 2, 2001), quoting *Rose v. Rose*, 9th Dist. Wayne No. 99CA0009, 2000 WL 840504 (June 28, 2000). Accordingly, such an order is subject to modification. *Fields* at ¶ 11.

{¶8} This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. Summit No. 24150, 2008-Ohio-5232, ¶ 9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. A trial court's determination regarding matters of child support is reviewed for an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989); *Swank v. Swank*, 9th Dist. Summit No. 21207, 2003-Ohio-720, ¶ 9. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶9} Mother argued during the hearing on her motion that a modification of the child support order was warranted pursuant to R.C. 3119.79, which provides:

(A) If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation. If that amount as recalculated is more than ten percent greater than or more than ten percent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet

shall be considered by the court as a change of circumstances substantial enough to require a modification of the child support amount.

* * *

(C) If the court determines that the amount of child support required to be paid under the child support order should be changed due to a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order or the last modification of the child support order, the court shall modify the amount of child support required to be paid under the child support order to comply with the schedule and the applicable worksheet through the line establishing the actual annual obligation, unless the court determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet would be unjust or inappropriate and would not be in the best interest of the child and enters in the journal the figure, determination, and findings specified in section 3119.22 of the Revised Code.

{¶10} This Court has recognized that "[a] party moving for the modification of child support must prove 'a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order or the last modification of the child support order.'" *Humiston v. Humiston*, 9th Dist. Medina No. 04CA0076-M, 2005-Ohio-4363, ¶ 15, quoting R.C. 3119.79(C).

{¶11} The instant case is analogous to the underlying facts in *Adams v. Adams*, 3d Dist. Union No. 14-12-03, 2012-Ohio-5131, wherein the parents agreed in a shared parenting plan to deviate from the amount of child support indicated by the child support schedule and worksheet so that neither party would pay any child support to the other. Thereafter, the mother sought a modification of the child support order, which the trial court granted on the ground that the new child support calculation based on the schedule and worksheet constituted a greater than ten percent difference from the previous order of zero dollars. Considering only R.C. 3119.79(A), the trial court concluded that the ten percent deviation was the only change in circumstances necessary to substantiate a modified child support order. The appellate court reversed and remanded, holding that where the parties had agreed to deviate from the amount of child support

that would be warranted pursuant to the child support schedule and worksheet, the trial court must "find more than a ten-percent deviation under R.C. 3119.79(A)." *Id.* at ¶ 30. Specifically, "the trial court [is] also required to find a substantial change in circumstances that was not contemplated at the time of the issuance of the child support order under R.C. 3119.79(C)." *Id.*

{¶12} The Third District had earlier required the same considerations in cases where the parties had previously agreed to child support in excess of the statutory guideline schedule amount. *Bonner v. Bonner*, 3d Dist. Union No. 14-05-26, 2005-Ohio-6173. The *Adams* court applied the reasoning in *Bonner*, focusing on the significance of the parties' agreement to deviate, not the direction of the deviation.

{¶13} This Court finds such reasoning persuasive. In fact, we have previously recognized the significance of parents' prior agreement to deviate from the amount of child support indicated by the statutory guideline schedule. In *Jindra v. Jindra*, 9th Dist. Medina No. 04CA0011-M, 2004-Ohio-6742, we affirmed the trial court's denial of a parent's motion to modify child support where the trial court applied the parents' previously agreed upon 29 percent deviation in its recalculation of child support and found a less than ten percent difference between the prior and current calculations. *Id.* at ¶ 9. This Court held that "[a]bsent evidence of a change in the parties' original shared parenting plan, the trial court does not abuse its discretion in utilizing the deviation that the parties agreed upon." *Id.*, citing *Harless v. Harless*, 6th Dist. Lucas No. L-01-1383, 2002-Ohio-2361, ¶ 8.

{¶14} In the instant case, Mother and Father agreed to deviate from the amount of child support indicated by the statutory worksheet and schedule so that neither party would pay any child support to the other. It is axiomatic that any recalculation of child support pursuant to the worksheet and schedule would result in a greater than ten percent difference where the prior

support obligation was zero dollars. Accordingly, in a case where the parties have previously agreed to a deviation in the amount of child support, the moving party must prove more than the existence of a ten percent deviation to demonstrate the required substantial change of circumstances. *See Adams* at ¶ 30. Moreover, the moving party must prove that such change of circumstances was not contemplated by the parties when they agreed to the prior deviation. *Id*. This is not to say that the changes in the parties' incomes alone cannot justify a modification; the domestic relations court must still consider the facts of each case. If those specific changes in incomes are substantial and were not contemplated at the time of the original order, those facts may justify a modification. The mere fact of a ten percent difference alone, however, will not justify a modification from the parties' prior agreed child support order.

{¶15} In this case, when the parties agreed to deviate from the amount of child support indicated by the statutory guidelines, they enunciated two bases for that agreement. They agreed to pay each other zero dollars for child support "based upon the parties' annual income, which is currently approximately the same, and the parenting schedule, which provides companionship on an approximately equal basis." At that time, Father's and Mother's annual incomes were $62,000 and $42,000, respectively. Nevertheless, the parties found the $20,000 difference in their respective incomes negligible, as they agreed that the two incomes were "approximately the same." As to parenting time, the parties' agreement directed that, in every two-week period, Mother would have the children 12 days to Father's 2. Nevertheless, the parties found Mother's daily companionship to be "approximately equal" to Father's every other weekend companionship. This Court notes the discrepancies in both the amount of the parents' incomes and the amount their respective companionship time with the children. Although it is not clear

why the parties found these variables to be relatively equal, those issues are not before us and we decline to address them.

{¶16} At the hearing, the evidence established that Mother's income had remained substantially the same since the parties agreed to a child support deviation. Father's income from teaching had increased from $62,000.00 to $64,163.56. Father had also assumed a part-time job as an athletic trainer, earning an additional $9,887.68 a year. Therefore, Father was earning approximately $12,000.00 more per year. On the other hand, the evidence demonstrated that Father had assumed the bulk of responsibility for the children.

{¶17} The evidence established that Father paid the full amount of health insurance for the children as the parties had agreed. Despite the parties' agreement that they equally split the costs of uncovered health expenses, however, Father testified that he had paid all uncovered expenses. Mother did not dispute this. In addition, despite the parties' agreement to equally divide the costs of the children's latchkey, sports, and other extracurricular expenses, Father had assumed all of B's latchkey expenses, all sports expenses, and the vast majority of expenses for other extracurricular activities. Moreover, Mother conceded that Father sees the children every day and keeps them overnight at least three nights a week. Because Mother works on weekends, she admitted that Father has the children every weekend. Father testified that he is the parent who takes the children to health care appointments and takes off time from work to care for any ill child. Both parents agreed that Father has the children most of the time in the summer because Father also enjoys summers off from his work as a teacher.

{¶18} Father testified that he takes the children to their many sporting events and practices year round. He takes them to weekend tournaments. He testified that Mother rarely attends any of the children's sporting events. In addition, the parties agreed that Father takes the

children to church and church activities. Although Mother would drop off children at the bus stop or school when they had spent a school night with her, the parties agreed that the children returned to Father's home every day after school. Father provided school lunches and dinner for the children. In addition, Father signed school ledgers every day indicating that the children had completed their homework. When the children slept at Mother's on Tuesdays, Wednesdays, and Thursdays during the school year, Father would drop off the children or Mother would pick them up after 5:30 p.m. when she was done with work. Although Mother testified that she cared for the children 60 percent of the time, except during the summer when Father had the children more often, Father testified that he consistently cared for the children 70 percent of the time. The children confirmed during in camera interviews that they spent the majority of their time under Father's care. Although Mother argues on appeal that the trial court had no authority to conduct an in camera interview with the children, she cites no authority and this Court has found none prohibiting such an interview.

{¶19} The trial court has the opportunity to view and hear the witnesses and is, therefore, in the best position to assess credibility. *Hammond v. Harm*, 9th Dist. Summit No. 23993, 2008-Ohio-2310, ¶ 52, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, this Court cannot say that the trial court erred by believing Father's testimony that he had assumed the vast majority of the responsibility for physical care and financial support of the children. When asked why she wants Father to pay child support, Mother replied that groceries and clothing cost more and she needs a "nicer" place for the children to live.

{¶20} Given Father's assumption of the majority of the responsibility for the children, this Court concludes that Mother failed to demonstrate a substantial change in circumstances

warranting a modification of child support inuring to her benefit.[1] Father's increase in income was offset by his assumption of financial obligations that the parties had agreed to split equally, as well as by his daily companionship (instead of two days every two weeks as the parties earlier agreed) which necessitated his feeding, housing, transporting, clothing, and supervising the children. It is important to bear in mind that "[t]he purpose of child support is to meet the needs of the minor children[, which] needs include shelter, food, clothing and ordinary medical care." *Irish v. Irish*, 9th Dist. Lorain No. 10CA009810, 2011-Ohio-3111, ¶ 13. Under these circumstances, this Court cannot say that the domestic relations court erred by denying Mother's motion to modify the amount of child support to above zero dollars where Father had assumed the bulk of the responsibility for the physical and financial needs of the children.

**{¶21}** Mother argues, and Father concedes, that the trial court miscalculated Father's income for purposes of the child support computation worksheet. We agree. The trial court recited Father's income as $66,538.00, rather than $74,051.24, the amount that would have taken into account his income from his part-time job. Nevertheless, in light of our conclusion that the mere existence of a greater than ten percent difference between the prior child support order and the current one did not warrant a modification, that error is harmless. Civ.R. 61.

**{¶22}** Finally, Mother argues that the domestic relations court erred by failing to address the issue of a deviation from the amount of child support indicated by the statutory guidelines. Mother disregards the fact that the parties agreed to deviate from the guideline amount based on

---

[1] Father has not moved for a modification of child support and this Court, therefore, renders no conclusion regarding whether his assumption of the bulk of the responsibility for the children would constitute a substantial change in circumstances not contemplated by the parties warranting a modification of child support in his favor.

their respective incomes and the division of companionship. The issue before the domestic relations court was whether a substantial change in circumstances not contemplated by the parties existed warranting a modification of child support. This Court concluded that the trial court did not err in finding no substantial change in circumstances warranting a modification. In the absence of the propriety of a modification, the issue of deviation from the statutory guidelines is not ripe. Moreover, Mother did not raise the issue of a deviation of the amount of child support ordered pursuant to R.C. 3119.22 before the trial court. Instead, she limited her argument to whether a change of circumstances warranting modification had occurred pursuant to R.C. 3119.79. Accordingly, Mother's argument in this regard is not well taken.

{¶23} For the reasons enunciated above, Mother's three assignments of error are overruled.

### III.

{¶24} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

ARTHUR AXNER, Attorney at Law, for Appellant.

LESLIE S. GRASKE, Attorney at Law, for Appellee.