[Cite as *Hock v. Soles*, 2022-Ohio-3531.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

JESSICA HOCK,

Plaintiff-Appellee,

v.

BRIAN SOLES,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 MA 0108**

---

Domestic Relations Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 12 DR 538

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Jessica Hock, pro se*, 3837 Riblett Road, Austintown, Ohio 44515, Plaintiff-Appellee, No Brief Filed and

*Atty. Joshua Baumann,* Mahoning County CSEA, 345 Oak Hill Ave., P.O. Box 119, Youngstown, Ohio 44501 for Appellee Mahoning County CSEA and

*Atty. James E. Lanzo*, 4126 Youngstown-Poland Road, Youngstown, Ohio 44514 for Defendant-Appellant.

Dated:  September 30, 2022

**Robb, J.**

{¶1}    Appellant Brian Soles (father) appeals the decision of the Mahoning County Common Pleas Court, Domestic Relations Division, which modified the child support payable to Jessica Hock (mother) after Appellee Mahoning County Child Support Enforcement Agency (the agency) filed a modification motion on the mother's behalf.  The father argues the statutory ten percent change test in R.C. 3119.79(A) is not sufficient to allow modification of child support if the prior order was the result of the parties' agreement to deviate from the worksheet figure.  We reject this argument.  The father's contingent argument is therefore moot; we need not decide whether the court abused its discretion in alternatively finding there were additional changed circumstances sufficient for modification under R.C. 3119.79(C).  For the following reasons, the trial court's judgment is affirmed as the ten percent change test is sufficient even where there existed a prior agreement to deviate.

STATEMENT OF THE CASE

{¶2}    The parties were married in 2001 and had three children.  A May 30, 2013 divorce decree incorporated their separation agreement and shared parenting plan.  The division of time with the children was split evenly.  The father was to pay $518.24 monthly in child support (and $1,000 in spousal support for four years).  The father's income was $61,000, and the mother's income was approximately $16,000.

{¶3}    Shortly thereafter, the parties agreed to terminate shared parenting and child support while designating the father as residential parent.  (8/19/13 J.E.).  The mother was later ordered to pay $325 in monthly child support, which was essentially deducted from the monthly spousal support she received from the father.  (6/4/14 J.E.).

{¶4}    In a May 5, 2017 agreed judgment entry, the parties returned to the original shared parenting plan with even division of parenting time.  The mother was designated as residential parent and legal custodian for school purposes.  The father's income was $68,000, and the mother's income was $13,200 (from Social Security Disability).  (Tr. 15-17, 31).  The parties agreed the mother would begin receiving the children's derivative Social Security Disability benefit ($600 monthly total), which was payable due to the mother's disability and which the father had been receiving.

Case No. 21 MA 0108

**{¶5}** The entry adopted the parties' agreement to deviate downwards from the child support guidelines, and the father was only obligated to pay $100 per month in child support. In addition to the father's extended parenting time, the entry also referred to "in kind benefits" he provided for the children. The entry contained no limitation on the future ability to seek modification of child support.

**{¶6}** Furthermore, the 2017 agreed entry did not specify the worksheet amount was unjust, inappropriate, or contrary to the best interests of the children. *See* R.C. 3119.22 ("the court must enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, its determination that the amount would be unjust or inappropriate and therefore not in the best interest of the child, and findings of fact supporting that determination"). *See also* R.C. 3119.79(C) (similar language for modifications).

**{¶7}** When more than three years passed, the mother requested an administrative review. Eventually, on February 2, 2021, a motion to modify child support was filed by the agency on the mother's behalf. The father then filed a motion to modify shared parenting on the basis the oldest child had been residing solely with the father for the past two years.

**{¶8}** A hearing was held before a magistrate on July 7, 2021. The mother confirmed the father's testimony stating the oldest child had been living solely with the father for over two years. (Tr. 19-20). She also acknowledged the other two children stayed with the father much of the four months prior to the hearing. (Tr. 21-24, 37-39). She explained this was due to her recovering from a procedure in March, her being sick with COVID-19 in April, and the children wishing to stay at the father's house more in the summer where there were more neighbors. (Tr. 21-24). The mother testified she desired a change in the amount of support because she was living "paycheck to paycheck" and the children were "getting bigger" with changing needs (such as increased grocery consumption).

**{¶9}** The father said the May 2017 shared parenting agreed order contained the child support deviation downwards to $100 per month because the mother began receiving the $600 derivative benefit for the children, which he had been receiving (as the

sole residential parent). He explained the magistrate formulated the 2017 plan so he did not have to receive the benefit and then pay it to her as child support. (Tr. 32-33)

{¶10} At trial, the parties recited their monthly expenses and their income. Since the prior order, the father's income had decreased from $68,000 to a set salary of $60,000 after he lost his job due to his prior employer's plant closure. (Tr. 31). The mother's income stayed the same since the prior order. The court used these figures in the new worksheet (with a reduction for $6,642 in annual health insurance premiums paid by the father).

{¶11} The August 16, 2021 magistrate's decision used a split custody worksheet upon finding the oldest child lived with the father. As the worksheet produced an amount of child support more than ten percent greater than the amount in the existing order, the magistrate found substantial changed circumstances required a modification. As additional changed circumstances, it was noted the mother testified the other two children were getting older and the groceries she needed for them were costing more. The magistrate also pointed out the mother would no longer be receiving the oldest child's $200 per month, as the court was ordering her to cooperate in directing this payment to the child or the father.

{¶12} The magistrate then deviated downward by 50% from the amount in the current child support worksheet (in favor of the father). Reference was made to the time the children spent with the father but tempered by the relative resources of the parties. (The decision specified there was no change to the designation of the party with the right to claim the children as dependents for tax purposes; prior orders provided this right to the father.)

{¶13} The father timely objected to the magistrate's decision. After the transcript was filed, the father was permitted to supplement the objections. He argued the only issue should have been whether there were substantial changed circumstances that were not contemplated at the time of the last order. Because the parties previously entered an agreed child support deviation, the father argued the statutory ten percent test was not sufficient evidence of changed circumstances. He then claimed there were no other changed circumstances. He said the changes worked in his favor, noting his income

decreased, the oldest child had been staying with him for the past two years, and the other two children had been staying with him for the past several months.

{¶14} On November 16, 2021, the trial court overruled the objections and adopted the magistrate's decision with one modification further decreasing the child support amount ordered by the magistrate. As to this decrease, the court found the father was entitled to an automatic ten percent reduction before the discretionary deviation because the children spent more than 90 overnights with him. *See* R.C. 3119.051(A).

{¶15} The court rejected the father's statutory construction argument and found there is an independent basis for modification upon the satisfaction of the test in R.C. 3119.79(A) (where the new worksheet amount is more than ten percent greater than the prior order), even in cases with a prior agreement to deviate from the child support worksheet. The trial court cited cases from this court and the Eleventh District applying a Supreme Court case on the subject and upheld the decision finding modification was warranted.

{¶16} The trial court also said assuming arguendo the case law on the statute was incorrect and additional changed circumstances were required, this case presented sufficient changed circumstances. The court noted the mother's loss of the $200 per month for the oldest son and cited the statute requiring non-means tested benefits to be deducted from the obligation of the parent upon whose claim the benefit is based. *See* R.C. 3119.05(O) (eff. 3/28/19). The court also pointed to the mother's testimony that she was living "paycheck to paycheck" and the children were "getting bigger" with changing needs; the court also adopted the magistrate's finding that the groceries she needed for the children were costing more.

{¶17} The court then agreed with the magistrate's decision to deviate downwards from the presumed amount by 50%, citing the extended parenting time exercised by the father, which was tempered by the large disparity in incomes. *See* R.C. 3119.231(A) (in addition to automatic reduction, the court shall consider an additional deviation for more than 90 overnights), (B) (if more than 147 overnights and court does not grant deviation, then the court shall specify the facts on which this decision is based), citing R.C. 2929.22 (the court may deviate from the amount of child support in the worksheet if the court considers the factors and determines the amount would be unjust or inappropriate and

therefore not in the best interest of the child) and R.C. 2929.23 (factors for deviation) (C) (extended parenting time).

**{¶18}** After the 50% deviation, the father was obligated to pay a total of $438.21 in monthly child support.  The father filed a timely notice of appeal from the trial court's judgment.  The agency filed a response brief focused on the father's first assignment of error.

CHILD SUPPORT MODIFICATION STATUTE

**{¶19}** The parties contest the relationship between division (A) and (C) of R.C. 3119.79.  The statute contains the following three sections:

(A) If an obligor or obligee under a child support order requests that the court modify the amount of child support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet. If that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.

(B) If the court determines that the medical needs of the child are not being met because of inadequate health insurance coverage, the inadequate coverage shall be considered by the court as a change of circumstance that is substantial enough to require a modification of the child support order.

(C) If the court determines that the amount of child support required to be paid under the child support order should be changed due to a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order or the last modification of the child support order, the court shall modify the amount of child support required to be paid under the child support order to comply with the schedule and the applicable worksheet, unless the court determines that

those amounts calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet would be unjust or inappropriate and therefore not in the best interest of the child and enters in the journal the figure, determination, and findings specified in section 3119.22 of the Revised Code.

R.C. 3119.79.

ASSIGNMENT OF ERROR ONE

**{¶20}** The father sets forth two assignments of error, the first of which contends:

"The Trial Court erred in finding that only a ten percent shift in the support amount was necessary to show a sufficient change in circumstances to allow for the adjustment of child support from a previously voluntarily agreed upon deviated amount."

**{¶21}** The father relies on division (C)'s requirement of substantial changed circumstances not contemplated at the time of the prior order. He states if there was an agreement to deviate from the worksheet amount, then the ten percent change test in division (A) of R.C. 3119.79 is inapplicable or is modified by division (C)'s language, "not contemplated at the time of the prior order."

**{¶22}** The father relies on the following Third District holding: "Since the parties entered into an agreement to deviate the child support obligation to zero, * * * the trial court was required to find more than a ten-percent deviation under R.C. 3119.79(A); the trial court was also required to find a substantial change in circumstances that was not contemplated at the time of the issuance of the child support order under R.C. 3119.79(C)." *See Adams v. Adams*, 3d Dist. Union No. 14-13-01, 2013-Ohio-2947, ¶ 11, quoting *Adams v. Adams*, 3d Dist. No. 14-12-03, 2012-Ohio-5131, ¶ 30. He also cites to the Ninth District's reliance on *Adams* when holding: "where the parties have previously agreed to a deviation in the amount of child support, the moving party must prove more than the existence of a ten percent deviation to demonstrate the required substantial change of circumstances" but must additionally prove the change of circumstance was not contemplated when the parties agreed to the prior deviation. *Trombley v. Trombley*, 9th Dist. Medina No. 17CA0012-M, 2018-Ohio-1880, ¶ 14. The father concludes that without such a reading of the statute, a child support agreement would be "an ephemeral moment in the record absent true meaning."

Case No. 21 MA 0108

**{¶23}** The agency responds by pointing out child support is for the benefit of the child, not the parent. *See generally Kelm v. Kelm*, 92 Ohio St.3d 223, 226, 749 N.E.2d 299 (2001) ("The duty owed by the courts to children under the doctrine of parens patriae cannot be severed by agreement of the parties" and res judicata does not apply to these types of child issues). The agency emphasizes the mandatory language in division (A) of R.C. 3119.79, which states if the ten percent change test is met, then this "shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount." And, it is pointed out the subsequent ability to deviate is the statutory mechanism allowing for a court's consideration of a prior agreement to the extent the court believes the failure to deviate would be "unjust or inappropriate and therefore not in the best interest of the child * * *." R.C. 3119.79(C); R.C. 3119.22. *See also* R.C. 3119.23(C) (other court-ordered payments), (Q) (any other relevant factor).

**{¶24}** The agency also points out the two appellate cases cited by the father fail to review their own districts' prior precedent taking a different position or the pertinent Supreme Court case on the subject, *DePalmo v. DePalmo*, 78 Ohio St.3d 535, 536, 679 N.E.2d 266 (1997). Moreover, the father's brief fails to review the appellate cases cited by the trial court, where this court and Eleventh District applied *DePalmo* and concluded the ten percent change test alone requires modification (unless the court exercises its discretion and sufficiently finds the deviation portion of the statute should be applied). *See Truckey v. Truckey*, 11th Dist. Ashtabula No. 2018-A-0048, 2019-Ohio-3232, ¶ 19-20 (finding the Third District's *Adams* decision appears to conflict with *DePalmo*); *Jefferson Cty. Child Support Enf. Agency ex rel. Brown v. Horkulic*, 7th Dist. Jefferson No. 02 JE 43, 2003-Ohio-1242.

**{¶25}** "It is well established that a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997) (finding no abuse of discretion in the trial court's refusal to deviate from the guideline amount when modifying child support). A reviewing court therefore defers to the trial court's resolution of factual questions related to a request to modify child support. However, as the agency points out, we review Appellant's first argument on the correct

statutory standard for modification under a de novo standard of review, as it is a question of law. *Horkulic*, 7th Dist. No. 02 JE 43 at ¶ 12.

**{¶26}** In the Supreme Court case relied upon by the trial court and the agency, a prior judgment granted custody to the father with visitation to the mother, incorporated the father's agreement to waive child support, and said the orders were in the child's best interest. *DePalmo*, 78 Ohio St.3d at 536. Just as is the situation in the case at bar, *the prior order did not specifically find the worksheet amount was unjust or inappropriate and not in the child's best interest*, as is required by statute in order to deviate from the guidelines. *See id.* at 538. As here, the obligee later filed a motion for child support with the assistance of the county agency.

**{¶27}** The *DePalmo* Court initially pointed out child support must be calculated in accordance with the guidelines and the worksheet for both an initial order and a modification motion. *Id.* at 539 (use the guidelines unless deviation warranted with specific findings), citing *Marker v. Grimm*, 65 Ohio St.3d 139, 141, 601 N.E.2d 496, 498 (1992). In *Marker*, the Court explained a completed worksheet must be made a part of the record and any court-ordered deviation must be supported by findings of fact and journalized, requiring strict compliance with the requirement to make a specific determination that the guidelines were "unjust or inappropriate and would not be in the best interest of the child" with criteria supporting the determination. *Marker*, 65 Ohio St.3d at 141.

**{¶28}** The *DePalmo* Court then quoted the portion of the former modification statute, R.C. 3113.215(B)(4), now reflected in division (A) of R.C. 3119.79. *DePalmo*, 78 Ohio St.3d at 539-540. As the Court summarized: "If there is a sufficient change in circumstances, the court shall require support in the amount set by the guidelines unless that amount would be unjust or inappropriate and not in the best interest of the child. The ten percent difference applies to the change in the amount of child support, not to the change in circumstances of the parents." *Id.* at 540 (and the court has the obligation to test any proposal of the parents to see if it meets the standards). The Court then observed:

> The law favors settlements. However, the difficult issue of child
> support may result in agreements that are suspect. In custody battles,

choices are made, and compromises as to child support may be reached for the sake of peace or as a result of unequal bargaining power or economic pressures. The compromises may be in the best interests of the parents but not of the child. Thus, the legislature has assigned the court to act as the child's watchdog in the matter of support. * * *
Obviously, when the amount of child support provided by the noncustodial parent is zero, but the Child Support Guidelines clearly establish that the noncustodial parent owes support, then that ten percent difference is clearly met. * * *

Whether a court is establishing an initial child support order or whether the court is modifying an order based on an agreement between the parties that does not include an order for the payment of child support, the court must apply the Child Support Guidelines as required by the standards set out in *Marker*. When the court is modifying a preexisting order for the payment of child support, the court must apply the ten percent test established by R.C. 3113.215(B)(4) in the Child Support Guidelines and the standards set out in *Marker*.

*Id.* at 540-541. The ten percent change test was mandatory regardless of the fact that the prior order deviated downward based on an agreement.

**{¶29}** This district thereafter applied *DePalmo* and allowed the mother, via an agency motion, to seek modification of child support two years after a court order incorporated an agreement giving the mother custody and waiving support from the father, quoting the above *DePalmo* holdings including those on the ten percent differential. *Horkulic*, 7th Dist. No. 02 JE 43 at ¶ 16-18. We pointed out R.C. 3119.79 contained provisions analogous to former R.C. 3113.215(B)(4), which the *DePalmo* case applied. *Id.* at ¶ 18. *See also Mossing-Landers v. Landers*, 2016-Ohio-7625, 73 N.E.3d 1060, ¶ 65 (2d Dist.) ("despite the re-codification of the child support statutes in 2001, nothing pertinent has changed in the wording of the provisions considered in *DePalmo*").

**{¶30}** The agency's brief reviews decisions from each district finding the ten percent change test in division (A) of R.C. 3119.79 is an alternative to the *entire* statutory phrase "substantial change of circumstances that was not contemplated at the time of

Case No. 21 MA 0108

the" last child support order, which phrase is contained in division (C). For instance, the First District has explained the statute allows a court to modify child support "when it finds *one* of the following: (1) a ten-percent deviation from the previous child-support order, (2) a support amount that does not meet the child's medical needs, *or* (3) a substantial change of circumstances that was not contemplated at the time of the original child-support order." (Emphasis added.) *Sapinsley v. Sapinsley*, 171 Ohio App.3d 74, 2007-Ohio-1320, 869 N.E.2d 702, ¶ 11 (1st Dist.). "Each provides an independent basis permitting modification of an existing child-support order." *Id.* "We also realize that when a court sets a zero-support order, a change of circumstances can occur anytime, and that the parties agree to such an order at their peril." *Id.* at ¶ 15 (where the parties previously agreed to deviate down from the guidelines).

**{¶31}** Likewise, the Second District pointed out where the ten percent change test was satisfied, the Supreme Court did not require the application of the other test, which considers whether the change was contemplated at the time of the last order. *Mossing-Landers*, 2016-Ohio-7625 at ¶ 59. The court noted the obligor in *DePalmo* specifically argued to the Supreme Court that child support should not be modified because "circumstances at the time of the hearing were substantially similar to those on * * * the date of the original agreement." *Id.*, quoting *DePalmo*, 78 Ohio St.3d at 536-537. As is the situation here, the Second District emphasized the prior agreed entry of support did not preclude either party from seeking modification. *Id.* at ¶ 65.

**{¶32}** By way of further example, where the parties' child support agreement with a monthly amount lower than the guidelines was entered as a judgment, the Tenth District concluded: "*DePalmo* requires that the trial court (1) recalculate the amount applying the ten percent rule to determine if a modification was warranted, and if so, (2) determine whether an adjustment from that amount is justified." *Dickens v. Joseph*, 10th Dist. Franklin No. 99AP-688 (May 30, 2000). The court pointed to its rejection of the argument that the ten percent rule should not apply in cases where the prior judgment incorporated the parties' agreement on the amount of child support. *Id.*

**{¶33}** In sum, the motion for modification of child support triggered the trial court's duty to complete a new worksheet. R.C. 3119.79(A). As the presumptive amount of child support generated by the worksheet was more than ten percent greater than the amount

in the last child support order, this fact "shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount." *Id.* This determination is essentially a substitute for the phrase in (C) "substantial change of circumstances that was not contemplated at the time" of the last order.

**{¶34}** The court must then modify the amount in accordance with the new worksheet "unless the court determines that those amounts calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet would be unjust or inappropriate and therefore not in the best interest of the child" (and enters various items in the journal in support of a deviation). R.C. 3119.79(C); R.C. 3119.22, citing R.C. 3119.23. The trial court did this and applied the exception in the father's favor by deviating downward by 50% (and this was after deviating downward by 10% under the statute on overnights). The extent of the deviation is not assigned as error on appeal.

**{¶35}** Based on the *DePalmo* precedent from the Ohio Supreme Court and the appellate districts applying such precedent, including this district, Appellant incorrectly argues that a prior entry with an agreed downward child support deviation cannot be modified based on the ten percent change provision alone. This assignment of error is without merit.

ASSIGNMENT OF ERROR TWO

**{¶36}** The father's second assignment alleges:

"The Trial Court erred in finding that even if a substantial change in circumstances were required that there was one shown on the record."

**{¶37}** In case he were to succeed on his first assignment of error, the father contends the trial court erred in alternatively finding there existed other changed circumstances sufficient to meet the test in R.C. 3119.79(C). Because this assignment of error is dependent on the success of the father's prior assignment of error, which was overruled, this assignment of error is moot. *See Vanek v. Hereda*, 5th Dist. Stark No. 2019CA00039, 2019-Ohio-4290, ¶ 23 (after expressing doubt on substantial changed circumstances besides the satisfaction of the ten percent change test, the court concluded: "because we have found that the ten percent threshold in R.C. 3119.79(A) has been met, we hold that this issue is now moot as a substantial change is evident on the record").

{¶38} As set forth in the prior assignment of error, the ten percent change test set forth in R.C. 3119.79(A) must be applied and constitutes the "change of circumstance substantial enough to require a modification of the child support amount" to comply with the new worksheet amount (unless the deviation factors are found to apply as they were here). Accordingly, it is irrelevant whether a different or additional changed circumstance was sufficient to meet the test in R.C. 3119.79(C).

{¶39} For the foregoing reasons, the trial court's judgment is affirmed.


Donofrio, P J., concurs.

Waite, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**